IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2012

**BARRY SMELLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1408      Steve R. Dozier, Judge**

**No. M2011-01228-CCA-R3-PC - Filed June 26, 2012**

The petitioner, Barry Smelley, appeals the post-conviction court's denial of his petition for post-conviction relief, arguing that the post-conviction court should be reversed for failing to make findings on his specific claims and that counsel's unilateral decision to release a witness from a subpoena violated his rights to compulsory process and to present a defense. After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROGER A. PAGE, JJ., joined.

David Christensen, Brentwood, Tennessee, for the appellant, Barry Smelley.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was convicted by a Davidson County Criminal Court jury of attempted first degree murder, especially aggravated burglary, and two counts of reckless endangerment and was sentenced to an effective term of twenty-nine years. This court affirmed his convictions and sentences on direct appeal, and our supreme court denied his application for permission to appeal. State v. Barry Ronnell Smelley, No. M2007-01884-CCA-R3-CD, 2009 WL 453989, at *1 (Tenn. Crim. App. Feb. 24, 2009), perm. to appeal denied (Tenn. Aug. 24, 2009).

Our opinion on direct appeal reveals that the petitioner's convictions stemmed from his shooting the victim, Laquita Bell, as she was lying in bed in her home with her five-year-old and eight-year-old sons around 11:00 p.m. on August 11, 2004. Id. According to the victim's testimony at trial, she and the petitioner had been dating and living together until two days before the shooting, when they began to frequently argue and she asked him to move out. Id. The petitioner stopped by the victim's home earlier in the day of the shooting to retrieve his clothes, and the two of them argued. Id. Before leaving, the petitioner told the victim that she was a "sitting duck" and then repeatedly telephoned and relayed messages to her through her son, causing the victim to change the locks to her home. Id. That night, the petitioner kicked open the locked door of the victim's duplex, called her by her nickname, and then shot her four times. Id.

The victim's mother, who lived next door to the victim, saw someone on the victim's porch after she heard the shots and was certain that the person was the petitioner. Id. at *2. The victim's sister heard the petitioner and the victim arguing earlier in the day of the shooting and heard the petitioner tell the victim that he was going to "get her." Id. Sergeant Charles Harrison, the officer who responded to the scene, recalled that the victim told him that the petitioner was the shooter. Id. The petitioner denied shooting the victim. Id.

On August 20, 2010, the petitioner filed a *pro se* petition for post-conviction relief in which he alleged that he was denied the effective assistance of trial counsel and that "[o]ther grounds" entitled him to relief. Post-conviction counsel was appointed, and an amended petition was filed in which the petitioner alleged that counsel's decision to release witness Mike Bunch from his subpoena violated his rights to compulsory process and to present a defense.

At the evidentiary hearing, the petitioner testified that Mike Bunch was the paramedic who responded to the scene and was supposed to testify at his trial. According to the petitioner, Bunch would have testified that "he heard a statement from the victim in the case say something that contradicts what they said as me being the shooter." The petitioner identified a letter he received from counsel which he took to inform him that counsel was going to call Bunch to testify that the victim was asleep when she was shot. The petitioner said that he did not find out that counsel had relieved Bunch from his subpoena until the second day of trial. He claimed that he would have never gone to trial and, instead, would have taken a "reasonable" plea had one been offered, had he known that Bunch was not going to testify. The petitioner stated that he did not agree with counsel's decision to introduce Bunch's report instead of live witness testimony.

The petitioner's trial counsel testified that he issued a subpoena for Bunch to testify at trial, but Bunch contacted him the night before he was to testify and said that he wanted

-2-

to remain out-of-town with his sick father if his presence at trial was not required. Counsel said that he was aware that Bunch's report "basically stated that when he spoke with [the victim] she said that she was asleep when she was shot." However, after conversing with Bunch and the prosecutor, counsel said that "[i]t became apparent that [Bunch] would elaborate more on that statement on the notation tha[n] was in his report . . . [and] was afraid that [Bunch] might qualify [his statement]." Counsel admitted that he unilaterally made the decision to release Bunch from subpoena and that the petitioner did not agree with that decision.

On cross-examination, counsel testified that he had been licensed to practice law since 1982 and dedicated approximately eighty percent of his practice to criminal defense. Counsel elaborated that, during a discussion with the court after he informed the petitioner that he had released Bunch, the prosecutor said that she had talked to Bunch and Bunch had said that he could have been paraphrasing in his report. Counsel recalled that the prosecutor further informed them that Bunch had said he would have put quotation marks around anything in his statement that someone had said verbatim. Counsel maintained that he felt it would be more effective to go forward with the trial with Bunch's statement rather than the live witness to keep the prosecutor from getting Bunch to elaborate on or qualify what was in his statement. Counsel said that the parties had never been close to a plea deal because the petitioner always maintained his innocence and that the plan all along was for the petitioner to testify to explain his theory "that there was another person who perpetrated the shooting."

After the hearing, the post-conviction court denied relief, finding that the petitioner failed to prove that he received the ineffective assistance of counsel.

## ANALYSIS

The petitioner argues that the post-conviction court should be reversed for failing to comply with Tennessee Code Annotated section 40-30-111(b), in that the court did not make findings on his free-standing constitutional claims, addressing instead only whether he received the ineffective assistance of counsel. He also argues that counsel's unilateral decision to release a witness from a subpoena violated his rights to compulsory process and to present a defense.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual

issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issues of deficient performance of counsel and possible prejudice to the defense are mixed questions of law and fact and, thus, subject to *de novo* review by the appellate court. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## I. Constitutional Claims

Again, the petitioner argues that counsel's unilateral decision to release a witness from a subpoena violated his rights to compulsory process and to present a defense and that the post-conviction court should be reversed for failing to make findings on his specific claims.

Our post-conviction statute provides for the waiver of issues that could have been, but were not, raised in a previous proceeding. Tenn. Code Ann. §§ 40-30-106(g), -110(f) (2006). In determining whether an issue is waived in a post-conviction proceeding, the Tennessee Code provides:

> (g) A ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless:
>
> > (1) The claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> >
> > (2) The failure to present the ground was the result of state action in violation of the federal or state constitution.

Id. § 40-30-106(g). The petitioner's claims that trial counsel's unilateral decision to release a witness from subpoena violated his rights to compulsory process and to present a defense could have been raised in the direct appeal but were not, and neither of the special circumstances provided for in Tennessee Code Annotated section § 40-30-106(g)(1)-(2) applies in this case. Therefore, consideration of these issues is waived. See, e.g., House v. State, 911 S.W.2d 705, 713-14 (Tenn. 1995). Accordingly, the petitioner's argument that the post-conviction court should be reversed for failing to make specific findings is pretermitted.

-4-

## II. Ineffective Assistance of Counsel

Even though the petitioner did not raise in this appeal the issue of ineffective assistance of counsel with regard to counsel's release of Mike Bunch from subpoena, because he raised it in his *pro se* petition and it is somewhat intermingled with his free-standing claims, we will address it.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. See U.S. Const. Amend. VI; Tenn. Const. art. I, § 9. To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

With regard to whether counsel was ineffective in releasing Bunch from subpoena, the post-conviction court found that the petitioner failed to prove by clear and convincing evidence that he was prejudiced by counsel's tactical decision to release Bunch. The court noted that admission of only the statement, rather than live witness testimony, kept Bunch from being subjected to cross-examination and "the possibility of lessening the impact of the statement." The post-conviction court observed the trial court's findings from when the issue arose at trial:

> "A" scenario would be, the witness is called, makes some statements that have already been alluded to that he might very well make, that this wasn't a quote and he can't really attribute to her. And, it may be paraphrasing that he thought she meant she was asleep just because she said she was in bed and his whole case falls apart. He gets convicted and, then, he claims that you should have not called him.
>
> So, I mean, I have to not totally rely on what . . . [counsel]'s impression is about what's best for [the petitioner], but, give that great deference because of what could happen on cross and in [counsel's] opinion, it's better to have what is already a given versus what could result if he is crossed. In other words, he's ending up, apparently, now with a better statement than the witness is willing to make live and in person, both sides having spoken with him.

The post-conviction court also found that the petitioner failed to prove by clear and convincing evidence that "'but for'" counsel's decision to release Bunch, the result of the proceeding would have been different.

After review, we agree with the findings of the post-conviction court. Counsel's decision to proceed only with Bunch's statement was a tactical decision he made based on his knowledge of the case and the possibilities that could arise if Bunch was subjected to cross-examination. The petitioner is not entitled to relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE

-6-